This is an appeal from the Circuit Court, which reversed the decision of the Commission and remanded for further proceedings, specifically stating after the expiration of time for notice of appeal. I would like to initially focus on a specific error that the Circuit Court made in its interpretation of the record, which led to the decision that was raised in this case. In its decision, the Circuit Court evaluated the testimony of the eyewitness, Kathy Terry, and it said that she made the following statement, and I quote, It's like each end of the building has a light, but not in the middle, end quote. And the Court, when determining whether there was sufficient light in the center of the apartment complex at night, decided that this statement that it believed was made by Ms. Terry was corroboration of the claimant's account that there was not enough light to see, and that was why she tripped over the curb. But if this Court will note, at page 318 of the record, Kathy Terry did not make the quoted statement. Actually, the petitioner made that statement on direct examination. Ms. Terry did not say that. Her testimony basically consisted of what she said was there were two large lights at each end of the parking lot, and there were individual lights on each apartment that threw light out onto the sidewalk. And when she was specifically asked during her testimony whether there was enough light to see the curb, she said that there was. This is a claimant or Terry? Ms. Terry said that there was enough light. This is page 318 of the record? On page 318, the claimant made the statement, It's like each end of the building has a light, but not in the middle. And the Circuit Court believed that Ms. Terry made that statement in her testimony, but from the record you can see that the petitioner actually said that. Ms. Terry's testimony starts at page 333 of the record, and it basically consisted of her saying that there was enough light to see, but the combination of the two lights at each end and all the lights in the center. And so when the Circuit Court made its holding, it specifically referred back to that statement saying that because there was corroboration, it believed, of the petitioner's testimony, that the decision of the Commission should be reversed. But since the Circuit Court clearly erred in attributing credit for who made that statement, there was no corroboration, as the Circuit Court believed. And its basis for reversing the Commission was an error. What did the claimant say again? Didn't she maintain that her route from the building to the parking lot was insufficiently lit for her to see the curb? The claimant said that it wasn't sufficiently lit, and her eyewitness stated her belief that there wasn't enough light to see. You're saying that Terry said there wasn't enough light to see? There wasn't enough light to see. The Circuit Court believed she said that there was not, because of that quoted statement that it attributed to her, that was actually made by the petitioner. What is the quote? Can you quote what Terry said about the light? What Terry said about the light was, she said there are lights where the client's apartments are at, and then you've got fall lights at the end. And when she asked, are you able to see the sidewalk, she said yes. And the question, can you see that there's a curb there before you step off, correct, page 335. She said, mm-hmm. Did she say that it was adequate, or did she just say there was lights coming from the building, at each end of the building? She said that there were lights at each end, which were sensor lights that come on at night, and that at each apartment door, along the entire length of the complex, there's also a sensor light that comes on at night. She said they're usually always burning at night. They throw additional light out onto the expansive sidewalk between those two floodlights. Clearly Terry said there was light, but Terry never specifically used the word or the phrase sufficient, did she? No, she did not say sufficient. She did say that you could see the curb. So she didn't say, as you told us, there was enough light. No, when she was asked if you could see, the inference that I believe the commission drew was that when she said yes, you could see, they inferred, they made the principal inference, yes, there was enough light. She said that she could see the curb. But when you quote from the record what someone said, you appreciate the exact words. And then you can argue that it's a reasonable or an unreasonable inference from those exact words, but don't give us the impression those were the words. Okay, I'm sorry. So what exactly did Terry say? She said, when she was asked, do those lights illuminate the sidewalk, are you able to see the sidewalk? Page 334 going on to 335. She said yes. And are you able to see the curb? Answer, yes. But when you go down, and she stopped, she was asked, can you see that there's a curb there, though, before you step off, correct? She said, mm-hmm. She never actually said yes to whether there was a curb, and she never used the phrase adequate or sufficient light. No, she did not. She was describing the light coming from the building and where, but whether or not it was adequate was never testified to by her. No, not in those words, no. So you've got the claimant saying it wasn't, Terry saying that there was some light coming from the building, but I don't see that it's clear that there was sufficient light. How do you draw that conclusion? I drew that conclusion, and I believe the commission drew that conclusion, which was basically flat out asked, can you see the curb before you step off? And she answered in the affirmative. Was she asked that night, could you see the curb that night? No, she was asked in general terms. I was just getting a general description when she's asked, can you see the curb when these lights are on? But, I mean, isn't the issue what was going on that night? Yes. And she testified that generally all the lights were burning. They were always burning at nighttime. She had worked there for, I believe, two and a half years. The commissioner had worked there for three. And Ms. Terry said that in general, yes, you can see the curb. She never testified to anything specific that night that was deficient in the lighting either, or anything that was out of the ordinary. And the commissioner, she did specify that that night there was insufficient light. She never said insufficient either. What she said... She said she couldn't see the curb. She said, when she was asked on page 318, why did you miss the curb, she answered, it was dark and I didn't see it. Okay. And that was on that specific night. That was on... She said she didn't. She didn't say she couldn't. She said that she didn't. She never said there was inadequate light. It's a bit of splitting hairs there, but she did say didn't rather than couldn't. That's the claimant. That is the claimant. All right. Let me ask you this. I mean, assuming if we were to decide that the claimant's injuries were due to the hazard of walking in a parking lot that's not sufficiently illuminated, we still get into the issue of whether or not the claimant was exposed to a risk greater than that of the general public, correct? Right. So tell us what your argument is on that issue, whether it was or was not a risk greater than what the general public would have been subjected to. On that issue, I feel it goes back to the Caterpillar decision about the risks inherent in traversing curbs, which was a decision made of someone who stepped off a curb in the daytime. They didn't address the situation at night. But they also didn't define when they said the risks inherent in traversing curbs confront all members of the public. They didn't address what those risks are. I looked for a specific case law in Illinois under workers' comp that said just that addressed the issue of whether traversing a curb at nighttime in artificial light in and of itself is a hazard, and I could not find any, in the absence of any other physical defect of the curb like ice or a hole, a pile of concrete, some other physical tangible defect that was present. Well, there are a lot of stairway cases, and one of the things that's always looked at is is there adequate lighting? Yes, I did see the stairway cases, but not the curb cases. Isn't it also a critical consideration, isn't it true in this case the employer designated which parking lot the employee was supposed to use? Evidently, from what I gather from the record, there was one parking lot in front of this entire complex, and the employees who worked there parked there. Any visitors to the residence at the facility would park there. So there were some members of the public coming and going, but the only practical location for employees to park would be in this one specific lot. So if the employees have to use a particular lot because of its proximity or convenience, and that is the law approved or that's acquiesced in by the employer and the employer knows that, what about the argument that the employer has chosen the location and the route that the employee must take getting to and from the workplace? In terms of the level of lighting? In terms of the general greater risk in the public. I mean, if the employer directs an employee to use a certain route, that's not necessarily the same that the public would be taking, is it? Right, and I agree that there is that standard. If that's the only place that the employee can go and that's a regular route, then there's a heightened inquiry there. As far as traversing curbs at nighttime under artificial light, it's our contention that that's an experience that is common to almost everyone. It's nearly ubiquitous, just the act of stepping off of a curb at some point at nighttime under artificial light conditions. The inquiry then would become more fact-specific. What was the level of light and was it sufficient? And in this case, the commission listened to the testimony of the claimant and listened to the testimony of her eyewitness and decided to go with the testimony of Ms. Terry that when she said that she could see the curb, they then inferred that there was enough light to see. And I did want to point out that the decision in the case was unanimous and that there was not even enough doubt to even draw a dissent from any of the commissioners as far as what the level of light was in this case. There were photos that were viewed by the commission, is that right? Yes. But they're not in the record, is that right? I believe that they were in the record. They may be in the first set. Okay. I'm curious if those photos are daytime photos. I believe they were taken in the daytime. They are black and white and they are not terribly helpful. If they were taken in the daytime, how would they be helpful? I don't know how they would be. Okay. And they do not really show the positions of the lights on the individual apartments either. They were not very helpful in that regard. If there are no other questions, let's reserve the rest of my time. Thank you. Thank you. Ms. Cooksey, you may respond. May it please the Court. My name is Christina Cooksey. I represent Petitioner Carletta Rhodes. I think that the record in this case has several things that are not disputed and clearly support not only the decision of the circuit court but also the decision of the arbitrator and also show that the commission's decision really did not have substantial foundation and clearly the opposite result would be apparent. Some of those undisputed facts are this was the only parking lot available for Petitioner to park in as she was working at the Hardin apartments. As an employee of Hardin apartments, she was required to come and go throughout the night because she was required to work double shifts. We have that as a fact of this case. Was she required by the employer to use this parking lot?  She testified that she was instructed to park there and, in fact, it was the only parking lot available to her. So she was required to come and go throughout the night. This accident happened when her double shift ended which was approximately two minutes after 10 o'clock at night when it would have been dark. It's undisputed that she was walking with her supervisor, Ms. Terry. At the time the accident happened, Ms. Terry had taken a break in her car and her cigarette pouch was in there. So her supervisor was actually with her to retrieve the cigarette pouch out of the car. So this is something that clearly the employer knew she was doing and where she was going. That was my next point. She was instructed to park there, so we got to that. And it's also clear in this case exactly how the lighting was set up from the testimony of both witnesses. Ms. Terry testified the lighting really depended on where you were coming from in the parking lot. She testified to two floodlights at the end and individual smaller lights on the apartments throughout the length of the building which I believe the testimony shows there were at least eight or nine parking spots for the length of the building and the photograph showed this was a long and narrow building. The petitioner also testified to the same thing, that there were these floodlights at the end of the building and those were more adequate lighting. However, in the middle that was less. She said at that night she had to park in the middle. And that's why it was dark and that's why she fell. The claimant testified she couldn't see the curb, correct? Yes. Terry, according to opposing counsel, characterizing Terry's testimony, assuming accurately, Terry said she could see the curb. Is that an accurate representation? Well, again, obviously. What about the lighting? Did Terry say that she could see the curb? That night? Yes. No, not the way I was when I sat in the hearing room. I didn't hear that testimony when I read the transcript. I didn't hear that testimony. If you read her testimony in context, she's asked, is there lighting in the parking lot? That's the first question. She said, it's light out there in the parking lot but you've got light. It depends on where you're coming from. And then she starts to describe the different lights. And do those lights illuminate the sidewalk? Are you able to see the sidewalk? Yes. And are you able to see the curb? Yes. But when you go down, and then he cuts her off and he says, but you can see there's a curb there before you step off, correct? And the record is, uh-huh. All right, so it sounds like an affirmative. So just follow this for a second. She says that she could see the curb. Uh-huh. I mean, clearly you can't say that she's saying no. She didn't say, yeah. We know that people say, uh-huh, that means it was a yes. But without parsing the words there, she says, indicates she can see the curb. Clearly the claimant says she can't see the curb when she falls. So if you have one person saying they can see the curb, one person says they can't see the curb, and the commission finds that it was adequately lighted, how is that against the manifest weight of the evidence? I think it's clearly against the manifest weight of the evidence in this case because she, in general, is saying I can see the curb. I don't think her testimony supports she could see the curb that night. The testimony doesn't go any further than that as well. She's not in there saying she should have been able to see the curb because I could that night when she fell. That foundation is never laid in this transcript at all. We don't know where she's at. We don't know if she's behind her, in front of her, if she traversed the curb successfully. We know nothing. Did she get that testimony across? I apologize. What testimony? Terry's testimony. That's what we're talking about. That was her direct examination, I believe. Direct examination? About Ms. Terry was respondent's witness, and when they examined her in general, they said is there lighting? Yes. You know, she said it depends on where you're coming from. Can you see the sidewalk? Can you see the curb? Okay, so did you have a chance to cross? I did. Huh? Yes, I did. But she apparently was shut off by her own examiner. On direct, yes. On direct. And did you follow up? I'm going to admit something I should never admit. Embarrassingly, no. This was about five months after I passed the bar. Okay. I have a lot more. It could have been five years after you passed the bar, or 50 years. You know, I looked back on that day after the commission reversed it, even when I walked out of the hearing room, and I think we both did, but I went, why did I not say finish your sentence? Because now I've seen that happen, and I would have loved to have gone back and said, and I'll admit that mistake. Fair enough. Absolutely. Well, and it seems that the trial court kind of follows along with what you were saying. I'm just looking at the order of December the 5th, 2011, by Judge Harrison, and he writes, the testimony of respondent's witness corroborates petitioner's testimony. And he goes on to say, and the photographs of the lot presented by respondent do not depict any lights whatsoever. It's that latter statement that I'm curious about, because, again, as I previously asked, it doesn't appear that we have photos in the record here. Is that true? There are pictures in the record. I don't have the number where it would be at yours, but as respondent's exhibit is right after Dr. Taylor's testimony, they're black and white copies, and you cannot see any lights in the photographs. So they're not helpful one way or the other. So do you believe those are the photographs that Judge Harrison would be referring to? I do. And then his statement that they do not depict any lights whatsoever, is he saying that there are no lights present or that they weren't on? What do we make of that? I think at this point he's saying I can't rely on the photographs to make a decision in this case. So what I have to look at is the claimant's testimony, and then I have to see if it was sufficiently rebutted by the respondent's witness. And in this case he found that the testimony was really consistent and different than the way the commission interpreted on the record as opposing. And I believe that reading the record, even with my fallacies on cross-examination, that you can't read these two witnesses as being diametrically opposed in any means because of so many times Terry's saying, but it was there, and it depends on where you come from. And the arbitrator, I believe, who listened, who was in the room and probably was looking at me going, what are you doing? Why aren't you asking more questions? The arbitrator described the testimony of the witness as unequivocal. So I think that to use that and say this is the manifest way and we're going to reverse the arbitrator, I don't think that there's enough evidence. All right, so try and pin it down, what you're saying. The commission erred because the commission apparently took the statement from Terry that she could see the curve as the functional equivalent that the area was adequately illuminated. Absolutely. But when you look closely, Terry did not say anything about sufficient, adequate, good lighting. Simply she could see it. We don't know exactly where from what vantage point in claimants that she could not. And we don't even know where. But the commission read something into Terry's statements apparently. Yes. If Terry could see it, doesn't it follow logically then that there was sufficient light for her to see it? It would even if Terry possibly had said, I saw it that night. But that's not what she was saying in cross-examination. It was a general, what's the lighting like? Can you see the sidewalk? And when she wouldn't say, could you see the curve? He said, but you know there's a curve before you step. You can see a curve before you step down. So I think if you look at the totality of the question. You can see there's a curve there. She's not saying that night. Before you step off. Correct answer. But in general, I believe that she was answering generally with regard to the condition of the parking lot because she had unequivocally said right before that, it depends on where you're coming from. And described why the lighting was different in different areas of the parking lot. So she wasn't asked there specifically that night in the middle of the parking lot where Petitioner was parked. Could she have seen it? Is she lying here today? And that testimony was never given by Terry. Would the claimant prevail if there was no Terry? I believe so. Because there's a defect in the parking lot alleged and proven not only by her testimony. The claimant's testimony. Right. It's sufficient. Well, there would be no testimony to catch her. Right. And I don't believe there is, even in this case, with Terry. Just in conclusion, Petitioner would say that there's no doubt in this record that the dark area in the middle of the parking lot after she worked a double shift at night caused or contributed to her fall and is an accident arising out of an endless course and scope of her employment. We all know the exclusive remedy would apply in this situation. This is her remedy. So we ask that it be reversed. I mean affirmed. We ask that the circuit court be affirmed. I have a question. Yes. What do you make of Terry's statement, it depends on where you're coming from? Didn't she say something to that effect? She did. She said it depends on where you're coming from. And I think it's entirely consistent with the entire record. It's undisputed that they had these larger fall lights. They were described as fall lights that were brighter at the ends of both buildings. Clearly those are there for a reason, to provide illumination. And that illumination was better at the ends of the parking lot than it was in the middle. Petitioner even said, I had to park in the middle that night. That's where it's darker. So that is what I believe Judge Harrison found was corroborative of Petitioner's testimony, and that's why this claim should be allowed. Thank you. Thank you. Ms. Wagner, you may reply. The only thing that I wanted to reply to is that Ms. Terry did differentiate between the sources of light, somewhat to the relative strengths of the light perhaps, and what those different sources were. But she never said that the lighting was sufficient, but she never said it was insufficient. And when she was asked generally, can you see out there, can you see the curb, she did answer in the affirmative. And even though she differentiated as to what the setup is at this particular workplace, her testimony was not equivocal. She basically laid out the layout for everyone, and then in the end said generally, yes, there's enough light to see. Generally, you can see when you step off the curb, because she said generally, I can see the curb when I leave at night. She actually said those words. They said, are you able to see the curb, though, when you step off? And she said, uh-huh, or mm-hmm. So in general, the inference being generally she is able to see it when she steps off the curb. All right. Thank you. Thank you, counsel, both for your arguments in this matter. Please take them under advisement. This position shall issue.